FILED
2026 Apr-17 PM 12:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ALABAMA**

**SOUTHERN DIVISION**

FILED
A 11: 18
U.S. DISTRICT COURT
N.D. OF ALABAMA

**MARCELLUS PAYNE,**

**Plaintiff,**

**v.** **Civil Action No. __________**

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,**

**Defendant.**

---

**COMPLAINT FOR BENEFITS UNDER ERISA**

**(29 U.S.C. § 1132(a)(1)(B))**

---

# I. INTRODUCTION

1. This action arises from the wrongful denial of long-term disability benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

2. The Plan defines disability in terms of the inability to perform the material and substantial duties of the occupation of the claimant.

3. Plaintiff ceased working on January 28, 2025, due to the combined and interrelated effects of lumbar spine pathology, bilateral knee pathology, escalating medical treatment, medication side effects, and pain triggered anxiety symptoms that impaired functional capacity.

4. Defendant denied benefits based on a generalized and abstract "light work" framework and a restricted medical review that failed to evaluate Plaintiff's actual occupational demands or the combined effects of his impairments.

5. The denial is not supported by substantial evidence and lacks a reasoned basis in the administrative record, reflecting a process that failed to provide the full and fair review required under ERISA, 29 U.S.C. § 1133.

6. Defendant both determines eligibility for benefits and pays benefits under the Plan, creating a structural conflict of interest that must be weighed in determining whether the denial was arbitrary and capricious.

7. Plaintiff has exhausted all administrative remedies available under the Plan.

8. The administrative record is fully developed and contains all material evidence necessary for the Court to determine that Defendant's denial cannot be sustained under the terms of the Plan or applicable ERISA standards.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because this is an action to recover benefits due under an employee welfare benefit plan governed by ERISA.

10. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2) because the Plan was administered in this District, the alleged breach occurred in this District, and Plaintiff resides in this District.

---

## III. PARTIES

11. Plaintiff, Marcellus Payne, is a participant in the Plan and a resident of Bessemer, Alabama.

12. Defendant, The Lincoln National Life Insurance Company, issued, administered, and adjudicated the group disability policy at issue and acted as a fiduciary within the meaning of ERISA.

---

## IV. THE PLAN AND STANDARD OF REVIEW

13. The long-term disability Plan is an employee welfare benefit plan governed by ERISA.

14. Defendant served as claims administrator and fiduciary responsible for determining eligibility for benefits and interpreting the terms of the Plan.

15. Despite repeated requests, Defendant failed to provide the governing Plan documents prior to litigation.

16. Defendant's failure to produce Plan documents deprived Plaintiff of the ability to evaluate applicable standards, definitions, and claim requirements and warrants reduced deference and heightened scrutiny of Defendant's determination.

17. The governing policy defines "Total Disability" during the Own Occupation Period to mean that, due to Injury or Sickness, the insured employee is unable to perform each of the Main Duties of his or her Own Occupation.

18. The policy defines "Main Duties" or "Material and Substantial Duties" as those job tasks that are normally required to perform the insured employee's Own Occupation and could not reasonably be modified or omitted.

19. The policy defines "Own Occupation" as a collective description of related jobs as they exist in the general labor market and national economy and does not permit reduction of the occupation to a generalized exertional classification divorced from its functional demands.

20. These definitions required Defendant to evaluate whether Plaintiff could perform each of the Main Duties of his Own Occupation as it exists in the general labor market and do not permit reduction of the occupation to a generalized exertional classification that fails to account for the actual functional demands of those duties.

21. The policy also contains a Pre-Existing Condition Exclusion, which applies only where a disability is caused or contributed to by a condition for which treatment was received within the defined lookback period and where disability begins within the applicable time limitation.

22. The policy requires that the condition relied upon during the lookback period be the same condition that caused the claimed disability and does not permit reliance on generalized symptoms, unrelated complaints, or prior treatment history absent that required connection.

23. Although the Plan grants Defendant discretionary authority to interpret the policy and determine eligibility for benefits, such discretion does not permit Defendant to disregard Plan terms, misapply exclusions, restrict medical review, or substitute a generalized exertional framework for the contractual Own Occupation standard.

24. Defendant's decision must be upheld only if it is the product of a deliberate and reasoned process and is supported by substantial evidence in the administrative record.

25. A decision that fails to engage with material evidence, applies inconsistent evaluative standards, or rests on an incomplete or restricted medical review cannot be sustained under arbitrary and capricious review.

26. A full and fair review requires meaningful engagement with evidence supporting disability, including treating physician opinions and documented escalation of care, and does not permit selective reliance on isolated portions of the record.

27. Defendant's decision cannot be sustained under the applicable standard of review, including arbitrary and capricious review, because it was not the product of a deliberate and reasoned process and is not supported by substantial evidence.

## V. FACTUAL BACKGROUND

### A. Plaintiff's Occupation and Own Occupation Standard

28. Plaintiff was employed as a Business Unit Leader in a Tier 1 automotive manufacturing environment.

29. The position required continuous physical presence on the production floor, immediate response to production interruptions, real time correction of process deviations, and simultaneous oversight of safety, quality, and output.

30. The position further required coordination of production activities, management of production flow, monitoring of materials and performance, and active participation in continuous improvement initiatives.

31. The occupation required sustained concentration, executive level decision making, and the ability to function under continuous operational pressure.

32. The occupation required endurance, resistance to stress, and the ability to respond in real time to dynamic production conditions.

33. The occupation is not defined by generalized exertional categories and cannot be reduced to a light work classification.

34. The use of a generalized exertional classification does not address whether Plaintiff could perform the actual functional demands of his occupation and does not satisfy the Plan's requirement that each of the Main Duties be evaluated.

35. The occupation requires continuous, reliable, and predictable performance and cannot be performed on an intermittent, modified, or unpredictable basis.

36. The relevant inquiry under the Plan requires evaluation of whether Plaintiff could perform those duties on a sustained, reliable, and predictable basis, rather than on a limited or intermittent basis.

37. Under the Plan's definition of Main Duties, the material functions of Plaintiff's occupation could not reasonably be modified or omitted, and therefore the relevant inquiry is whether Plaintiff could perform all essential duties on a sustained and reliable basis.

38. Defendant's reliance on a generalized "light work" classification improperly substitutes an exertional shorthand for the Plan's requirement that Plaintiff be able to perform each of the Main Duties of his Own Occupation.

39. Defendant did not reconcile the generalized "light work" framework with the specific functional demands of Plaintiff's occupation reflected in the administrative record and therefore did not perform the analysis required under the terms of the Plan.

---

## B. Medical Condition and Escalation

40. Plaintiff ceased working due to escalating physical pain and functional impairment.

41. The administrative record documents lumbar spine pathology, bilateral knee pathology, and progressive treatment including therapy, imaging, injections, medial branch blocks, radiofrequency ablation, and opioid medication.

42. The escalation of treatment reflects worsening functional impairment and increasing severity of symptoms.

43. The progressive nature of Plaintiff's treatment demonstrates that his condition was not static and required increasing levels of intervention, which is inconsistent with a finding that he retained the capacity to perform his occupation.

44. Despite documented escalation, Defendant maintained a fixed denial position without meaningfully addressing the impact of worsening symptoms on functional capacity.

45. Defendant did not meaningfully evaluate the effect of this documented escalation on Plaintiff's functional capacity or ability to perform the material and substantial duties of his occupation.

46. Defendant failed to evaluate whether Plaintiff's condition, viewed in light of this progression, permitted sustained performance of the material duties of his occupation.

## C. Structurally Defective Medical Review

47. Defendant referred the claim to a reviewing physician.

48. Defendant expressly instructed the reviewing physician to assess only bilateral knee related limitations, excluding lumbar spine pathology from review.

49. At the time of this directive, the administrative record contained documented lumbar spine pathology associated with functional impairment.

50. By restricting the scope of review, Defendant prevented any meaningful evaluation of Plaintiff's full functional capacity and the combined effects of his impairments.

51. This restriction ensured that the resulting review would not evaluate the full scope of Plaintiff's documented impairments.

52. Defendant nevertheless relied on this incomplete and artificially restricted opinion as a central basis for denial, despite the fact that the review excluded material conditions documented in the administrative record and therefore could not assess Plaintiff's full functional capacity or satisfy the Plan's requirement that disability be evaluated based on the ability to perform each of the Main Duties of his Own Occupation.

53. A medical opinion derived from a restricted and incomplete review cannot constitute substantial evidence supporting a denial of benefits.

54. Defendant's restriction of the reviewing physician to knee related limitations directly conflicts with the Plan's requirement that disability be evaluated based on the insured's ability to perform each of the Main Duties of his Own Occupation.

55. By excluding lumbar spine pathology and its functional effects from review, Defendant ensured that the resulting opinion could not address whether Plaintiff satisfied the Plan's definition of Total Disability.

56. Defendant's reliance on that restricted opinion reflects a determination driven by an incomplete and structurally defective review process rather than a deliberate and reasoned evaluation under the terms of the Plan.

57. Because Defendant relied on a medical opinion that excluded material conditions documented in the administrative record, the resulting determination lacks the reasoned foundation required under ERISA.

58. A review process that excludes a material condition already documented in the administrative record cannot serve as a complete basis for denying benefits under an Own Occupation standard.

59. Defendant's determination, therefore, cannot be sustained under arbitrary and capricious review because it is based on an incomplete and restricted medical evaluation that fails to address material conditions documented in the administrative record.

## VI. DEFENDANT ERRORS

60. The issue under the Plan is not whether Plaintiff retained the ability to perform isolated tasks, but whether he could perform the material and substantial duties of his occupation with reasonable continuity, reliability, and predictability, which Defendant failed to evaluate.

### A. Failure to Apply the Plan's Own Occupation and Main Duties Definitions

61. The governing policy required Defendant to determine whether Plaintiff was able to perform each of the Main Duties of his Own Occupation.

62. Instead of applying that contractual standard, Defendant relied upon a generalized and abstract "light work" framework.

63. A generalized exertional category is not equivalent to the Plan's requirement that Plaintiff be able to perform each Main Duty of his Own Occupation.

64. By substituting a generalized functional category for the specific occupational standard required by the policy, Defendant failed to apply the Plan as written.

65. Defendant further failed to analyze whether the restrictions identified in the medical review were compatible with the actual Main Duties of Plaintiff's occupation.

66. Defendant therefore did not answer the contractual question posed by the Plan.

67. Defendant's reliance on a generalized exertional classification was not merely descriptive but replaced the required analysis of whether Plaintiff could perform the actual Main Duties of his Own Occupation.

---

## B. Failure to Evaluate Combined Impairments

68. Defendant evaluated conditions in isolation and failed to assess their combined functional impact.

69. The administrative record reflects lumbar spine pathology, bilateral knee pathology, pain related functional loss, medication effects, and pain triggered anxiety symptoms.

70. These conditions do not operate independently and instead interact to compound their functional impact.

71. A full and fair review required evaluation of the cumulative effect of these impairments on Plaintiff's ability to perform his occupation.

72. Defendant failed to perform that combined impairment analysis.

---

## C. Structurally Defective Medical Review

73. Defendant restricted the reviewing physician to knee related limitations while acknowledging lumbar spine pathology and then relied on the resulting incomplete opinion.

74. That restriction was not a neutral feature of the review process but was imposed by Defendant.

75. The resulting opinion could not and did not assess the full scope of Plaintiff's documented impairments.

76. A medical review that excludes a material condition already documented in the administrative record cannot serve as a complete foundation for denying disability benefits.

77. Defendant nevertheless used that restricted review as a central basis for denial.

78. The review process was therefore structurally defective.

---

## D. Selective Reliance on Evidence

79. Defendant selectively relied on portions of the administrative record supporting denial while disregarding evidence demonstrating functional impairment and treatment escalation.

80. ERISA requires meaningful engagement with evidence supporting disability, including treating physician opinions and documented escalation of care.

81. Defendant failed to meaningfully address evidence of therapy, imaging, injections, medial branch blocks, radiofrequency ablation, opioid medication, and ongoing pain related functional loss.

82. Defendant likewise failed to engage with evidence demonstrating the interaction between pain and anxiety and their combined effect on functional capacity.

83. This selective treatment of the record reflects outcome-oriented reasoning rather than a balanced and reasoned evaluation of all material evidence.

---

## E. Mischaracterization of Occupation

84. Defendant substituted a generalized occupational classification without analyzing the material and substantial duties of Plaintiff's actual occupation as required under the Plan and further shifted from Plaintiff's actual occupation to a generalized occupational framework without explanation or reconciliation with the duties reflected in the administrative record.

85. Plaintiff's occupation involved continuous physical presence on the production floor, immediate response to production interruptions, real time correction of process deviations, simultaneous oversight of safety, quality, and output, and sustained functioning under operational pressure.

86. These demands are not captured by a generalized exertional classification.

87. Defendant failed to perform a meaningful vocational analysis of the occupation as required under the Plan.

---

## F. Failure to Establish a Reasoned Connection

88. Defendant failed to establish a reasoned and principled connection between the evidence in the administrative record and its conclusion.

89. Defendant failed to build a logical bridge between the evidence and the denial.

90. The record reflects significant medical findings, escalating treatment, documented restrictions, and occupational demands incompatible with reliable performance.

91. Defendant nevertheless concluded that Plaintiff was not disabled without articulating a coherent explanation connecting those facts to that result.

92. The denial therefore lacks a reasoned basis capable of meaningful judicial review.

---

## G. Failure to Evaluate Functional Reliability

93. Defendant failed to evaluate whether Plaintiff could sustain work activity with reasonable continuity, reliability, and predictability.

94. The ability to perform an occupation under the Plan necessarily includes the ability to do so on a sustained and reliable basis.

95. The ability to perform isolated or intermittent tasks does not equate to the ability to perform the material and substantial duties of an occupation.

96. The administrative record reflects variability, pain flares, mobility limitations, cognitive effects from medication, and pain triggered anxiety symptoms.

97. Defendant failed to evaluate this issue directly.

---

## H. Internal Inconsistency

98. Defendant applied differing evaluative frameworks to the same medical evidence without reconciling those approaches.

99. Defendant's review process shifted frameworks rather than applying a consistent analysis from beginning to end.

100. A decision reached through inconsistent evaluative methods lacks the reasoned consistency required of an ERISA fiduciary.

---

## I. Procedurally Deficient Review Structure

101. The sequence and structure of Defendant's review reflect a progressively narrowed evaluation that failed to consider material evidence supporting disability.

102. Defendant did not begin with the full question posed by the Plan and assess the complete record against that standard.

103. Instead, Defendant narrowed the review, limited the medical scope, abstracted the occupation, and reached a conclusion through a process that failed to fully engage with the record as a whole.

104. That review structure was procedurally deficient and materially affected the integrity of the decision.

---

## J. Failure to Provide Plan Documents

105. Defendant's failure to provide Plan documents deprived Plaintiff of a full and fair review and warrants reduced deference and heightened scrutiny.

106. Without timely access to the governing policy language, Plaintiff was impeded in his ability to evaluate Defendant's interpretation of key definitions, exclusions, and procedural obligations during the administrative process.

107. That failure further undermines the fairness of the review process.

---

## K. Failure to Address Treating Physician Opinions

108. Defendant failed to meaningfully address, evaluate, or rebut treating physician opinions supporting disability.

109. The administrative record includes treating physician support for work incapacity, functional restrictions, and ongoing escalation of care.

110. A fiduciary may disagree with treating physician opinions, but it may not disregard them without meaningful engagement and a reasoned explanation grounded in the record, particularly where those opinions are consistent with the longitudinal medical evidence, documented escalation of care, and ongoing functional limitations.

---

### L. Misapplication of the Pre-Existing Condition Exclusion

111. Defendant invoked a Pre-Existing Condition framework during the claim process.

112. The policy requires that the condition relied upon during the lookback period be the same condition that caused the claimed disability.

113. Defendant did not establish that the condition identified during the lookback period was the same condition causing Plaintiff's disability, as the policy requires a direct causal relationship between the condition identified during the lookback period and the condition causing disability, not merely generalized or unrelated symptom overlap.

114. Instead, Defendant relied on generalized symptoms, prior complaints, or unrelated treatment history.

115. Defendant's use of the exclusion improperly narrowed the scope of review and distorted the claim determination process.

116. To the extent Defendant relied on an overbroad interpretation of the exclusion rather than the actual terms of the policy, Defendant misapplied the Plan.

## VII. CLAIM FOR RELIEF

**(29 U.S.C. § 1132(a)(1)(B))**

117. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

118. Plaintiff is entitled to long term disability benefits under the terms of the Plan.

119. Defendant's denial of benefits was arbitrary and capricious, not supported by substantial evidence, and contrary to the administrative record and governing Plan terms.

120. Defendant failed to provide a full and fair review as required under ERISA.

121. As a direct and proximate result of Defendant's actions, Plaintiff has been wrongfully denied benefits to which he is entitled under the Plan.

---

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

A. Award all past due long term disability benefits owed under the Plan;

B. Reinstate Plaintiff's entitlement to ongoing long term disability benefits in accordance with the terms of the Plan;

C. Declare that Plaintiff is disabled within the meaning of the Plan;

D. Award pre-judgment and post-judgment interest on all benefits due;

E. Award reasonable attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

F. Remand the claim for a full and fair review or, in the alternative, award benefits outright based on the fully developed administrative record and Defendant's failure to conduct a legally sufficient review.

---

Respectfully submitted,

Marcellus Payne

Plaintiff, Pro Se

/s/ Marcellus Payne
Marcellus Payne
Plaintiff, Pro Se